UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ROBERT HUDSON,

        Plaintiff,                              CIVIL ACTION NO. 08-10625

        v.                                      DISTRICT JUDGE LAWRENCE P. ZATKOFF

COMMISSIONER OF                   MAGISTRATE JUDGE VIRGINIA MORGAN
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

      This is an action for judicial review of the defendant's decision denying plaintiff's application for Social Security disability benefits. Plaintiff alleged an onset date of June, 2005, and disability due to carpal tunnel syndrome, radiculopathy of the cervical spine, and lumbar radiculopathy. The defendant found that plaintiff, in spite of his impairments, could perform his past relevant light work as an inspector in the automobile industry. Plaintiff contends that this finding is not supported by substantial evidence. Each party filed a motion for summary judgment. For the reasons discussed in this Report, it is recommended that the defendant's motion be granted, plaintiff's motion denied, and the decision denying disability benefits be affirmed.

      Plaintiff was born in 1950. At the time of the ALJ's decision, plaintiff was age 57. He has past relevant work as an assembler, inspector, and industrial truck operator with General Motors. He has a high school education. He retired from General Motors in 2005, receives a pension of about $2760/month and redeemed his worker's compensation claim for about $97,000. (Tr. 135) His last job there was as an "auditor" inspecting the underneath of trucks from a pit below the vehicle. This job required him to walk downstairs to the pit area. He had a

- 1 -

sharp pain and "went to the floor" just after looking up at a truck in June, 2005. He has since been unable to work due to low back pain, problems with his right hand, numbness in his leg and neck pain. (Tr. 134)

*Legal Standards*

    *A. Disability Evaluation*

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). The claimant bears the burden of proving that he is disabled. Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate DIB claims. 20 C.F.R. § 404.1520. In Foster, 279 F.3d at 354 (citations omitted), the Sixth Circuit discussed the process:

> The claimant must first show that she is not engaged in substantial gainful activity. Next the claimant must demonstrate that she has a "severe impairment." A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment." If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity

> must be considered to determine if other work can be performed.
> The burden shifts to the Commissioner at this fifth step to establish
> the claimant's ability to do other work.

   *B. Standard of Review*

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of
> Social Security made after a hearing to which he was a party,
> irrespective of the amount in controversy, may obtain a review of
> such decision by a civil action commenced within sixty days after
> the mailing to him of notice of such decision or within such further
> time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). The Sixth Circuit stated in Brainard, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Further, "the decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.

*Plaintiff's allegations*

Plaintiff alleges that he could not return to his past relevant work and the ALJ's finding to the contrary is not supported by substantial evidence. Essentially, plaintiff argues that the ALJ failed to accurately evaluate plaintiff's complaints of pain. If his pain were determined to be fully credible, then he could not return to his work and the hypothetical to the vocational expert would be inaccurate.

The ALJ found that plaintiff's complaints of pain were not fully credible. Pain caused by an impairment can be disabling, but each individual has a different tolerance of pain. Houston v. Secretary of HHS, 736 F.2d 365, 367 (6th Cir. 1984). Therefore, a determination of disability based on pain depends largely on the credibility of the plaintiff. Houston, 736 F.2d at 367; Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997); Villarreal v. Secretary of HHS, 818 F.2d 461, 463 (6th Cir. 1987). Because determinations of credibility are peculiarly within the province of the ALJ, those conclusions should not be discarded lightly. Villarreal, 818 F.2d at 463 and 464.

In Duncan v. Secretary of HHS, 801 F.2d 847 (6th Cir. 1986), this circuit modified its previous holdings that subjective complaints of pain may support a claim of disability. Subsequently, the Social Security Act was modified to incorporate the standard. 20 C.F.R. § 404.1529 (1995). A finding of disability cannot be based solely on subjective allegations of pain. There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. Jones v. Secretary of HHS, 945 F.2d 1365, 1369 (6th Cir. 1991). Here, plaintiff has established that he has degenerative changes in his spine and has carpal/cubital tunnel syndrome. He had surgery on his right hand for the CTS, but not on his left. For two years he took Vicodin for his pain, but shortly before the hearing began taking Oxycontin.

Plaintiff's medical records show that he was to undergo physical therapy in August, 2005. He went for about a month (six visits); he canceled five others. (Tr. 84) He was on vacation for two weeks and did not attend. Upon his return, he noted improvement in his neck and low back pain. (Tr. 85) He saw the doctor the next week and after that, did not return to therapy. He failed to respond to calls from the Physical Therapy service and was discharged

from therapy in August, 2005. (Tr. 84) He was discharged to a home exercise program (HEP) and the prognosis of continued strengthening on the HEP was good. Id.

A residual functional capacity assessment shows that plaintiff could lift 50 pounds occasionally, 25 pounds frequently, stand/walk 6 hours of 8 hour workday, sit 6 hours, and is unlimited push/pull for controls. (Tr. 91-95) The report noted the medical evidence of bilateral CTS, and cervical and lumbar radiculopathy. Plaintiff has degenerative disc disease, some spasms and rigidity of the lumbar spine, but normal muscle strength, a steady gait,[1] and normal hand grip strength. (Tr. 95)

Plaintiff's treating physician Dr. Jeffrey Levin, M.D., a board certified neurologist, reports in November, 2006, that he last saw plaintiff six months earlier. Dr. Levin followed him for the CTS and radiculopathy. Dr. Levin prescribed Vicodin for pain management and physical therapy. Plaintiff was 5' 10" tall and about 213 pounds. (Tr. 99) There was no aphasia or apraxia. Motor examination showed positive Tinel's and Phalen's sign at both wrists. Biceps and triceps were weak. He had pain with straight leg raising and an antalgic gait. His physical therapy prescription was extended for twice weekly visits for 12 weeks. His Vicodin was renewed and he was to return in six months. (Tr. 99) In May, 2005 his MRI showed degenerative changes, including disc bulging and spinal stenosis in the cervical and lumbar spine. EMG studies showed cervical radiculopathy and bilateral carpal and cubital tunnel syndrome. (Tr. 107-111) Plaintiff underwent carpal tunnel surgeries on his right hand but not on his left. He was treated conservatively by his physician Dr. Levin, with medication and physical therapy. Although early on there was some reference to possible surgery for his neck pain, ultimately Dr. Levin did not recommend additional surgery. Dr. Levin saw him in October,

---

[1] Reference to a steady gait is not consistent with the opinion of the treating physician.

2005, and renewed the Vicodin, and set the next date for 4 to 6 months. Plaintiff was to get an MRI.

Plaintiff had an MRI for low back pain May 31, 2005. It showed spondylitic changes of the lower lumbar sine, most prominent at L5/S1 with marked right-sided foraminal stenosis with milder left-sided foraminal stenosis. There was no evidence of disc herniation or central canal stenosis. Also, in May 2005, an MRI was performed for neck pain. This showed left lateral recess and foraminal stenosis at C3-4, right sided foraminal stenosis at C5-6, and borderline central canal stenosis at C6-7. (Tr. 111) In October, 2005, plaintiff had another MRI. This showed spondylitic degenerative disk dessication at L2-3 and L5-S1, more severe at L5-S1. Lumbar vertebral body height and alignment were normal. There was a moderate disk bulge at L5-S1 and L4-5. (Tr. 108) There is no evidence of central canal stenosis or disc herniation. (Tr. 110) It appears that plaintiff had no further testing and may not have received any treatment between November 2006 until April, 2007 when he reported to Dr. Levin that he had increasing lower back pain. (Tr. 116) Dr. Levin recommended that he have another MRI. Plaintiff went for physical therapy for his low back pain. (Tr. 117-123)

Plaintiff's hearing before the ALJ was held May 31, 2007. Plaintiff told the ALJ that he did the dishes, and can drive. He can do laundry, take out the trash, go shopping, and do lawn work using a self-propelled mower which he walks behind. He fishes once a week, takes out his pontoon boat, can lift ten to 15 pounds, and can sit for half hour to 45 minutes. (Tr. 138-141) He takes Oxycontin twice daily and has for the past month. Prior to that he was on Vicodin for two years. (Tr. 142-143) The pain radiates down his back. He can pick up small objects but sometimes has tingling in his hands. He did not take Oxycontin the day of the hearing because it makes him drowsy.

The ALJ noted that plaintiff continued to lead a fairly active and independent lifestyle in his retirement. He gets up at 8 am or so, has breakfast, visits, shops, makes phone calls, goes to

his mother's house, runs errands, fishes, and otherwise cares for himself and his personal needs independently. (Tr. 62, 65, 136) The medical records do not show any objective decline in plaintiff's condition or overall level of functioning.

The ALJ considered the testimony of a vocational expert. Plaintiff contends that the hypothetical did not accurately portray his impairments. Plaintiff was found able to return to his previous light work as an inspector. The inspector position was described as unskilled and light.

Light work is defined as:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §404.1567(B). In this case, the ALJ limited plaintiff to a restricted range of light work which did not require climbing, ladders, or scaffolds, did not require crawling, stooping, crouching, or bending, and did not expose him to excessive vibration. (Tr. 12-13) This restriction eliminated his past jobs except for that of inspector. No doctor has indicated that plaintiff has medical conditions that would prevent his performance of the duties of inspector. While the ALJ did not find that plaintiff could perform all his past jobs, he did find that plaintiff could perform his former inspector job. This is sufficient to support the determination.

While plaintiff argues that he is drowsy as a medication side effect and has trouble concentrating, his application notes that he has no problems with this. (Tr. 67). The Oxycontin use has been of short duration and apparently when he was on Vicodin, he could pay attention. Id.

Accordingly, it is recommended that the defendant's motion be granted, that of the plaintiff denied, and the decision denying disability benefits be affirmed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: October 20, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on October 20, 2008.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan